Good morning. May it please the Court, my name is Kurt Kennedy. This is my co-counsel Gary Modafferi from Las Vegas. We represent the appellant, Dr. Scafidi, in this matter. As a predicate, I would reserve three minutes for rebuttal, please. As a predicate to consideration of why we're here, it's important that this Court understands the procedural posture of this case. When this case started in late 14, early 15, Dr. Scafidi had different counsel at that time. The parties had all agreed, after they were served, to stipulate to stay the proceedings in the federal court matter, while the criminal matter was proceeding through the Nevada State Court in Las Vegas. So because of that stay, which was granted by the Court as through a stipend order, no discovery has been conducted in this case. There's been no scheduling order and discovery plan filed in this case. There's been no 26-F production in this case, nothing, zero. And the reason that's important, that stay remained in effect for about two years. And then in May of 2017, on a status check on the stay in front of Judge Jones in Las Vegas, the Court, at the end of the proceeding, essentially invited the metro defendants, the respondents, that it would entertain a motion, a dispositive motion, a motion for summary judgment. And so with that urging from the district court, later in 17, the respondents did file a motion for summary judgment, a motion not predicated on any, any discovery conducted at all in this case. It was all predicated on what happened in the related State court criminal proceedings. This is a 1983 action, civil rights violations related to Dr. Scafidi's treatment by the police and the authorities, and that's the factual basis of that. So in the, with that understanding, that summary judgment was commenced when no discovery had occurred in this case, it's important to take a look at what did Judge Jones rely on. Repeatedly throughout his order, and of course in the respondents' briefing, is the great case of Haupt v. Dillard. And Haupt v. Dillard, back in the 1990s, the Ninth Circuit indicated that in Nevada, when you have a probable cause determination at a preliminary hearing, that is dispositive of the issue of probable cause itself. In other words, it has collateral estoppel effect, issue preclusive effect. Well, if that was the case, of course, California, this Court has interpreted other cases out of California, the Awabdi case that I've indicated and others as well, saying that when you, a preliminary hearing can have issue preclusive or collateral estoppel effect unless there is evidence that the probable cause determination was infected by government misconduct, some sort of wrongful lack, some sort of fabricated evidence, bad faith, a number of different circumstances cited in the Awabdi case. And the reason that's important, because Judge Jones in his order and the respondents in their brief overlooked and did not see that our Nevada Supreme Court had actually addressed the Awabdi case. Fourteen years ago, in 2005, in the Jordan case, which I cited in the reply, in that case was a civil rights case. In that case, the gentleman was challenging what happened in this criminal case, including the preliminary hearing. They all come back to the preliminary hearing, which reminds you, the preliminary hearing is one of the earliest stages of proceedings in any criminal case. Let me ask you a question about Jordan. Yes. Does it appear that Judge Jones was aware of Jordan? I don't think he was. I don't think he was. And I will tell you, I only found it myself. It's buried. And I found it when doing my reply. And I don't think he was aware of it because the implication is that Halp v. Dillard has never been ruled against or held contrary by the Nevada Supreme Court, but that's not the case because Jordan was, I believe, a full court decision. And how much opportunity for research and briefing did Judge Jones give the parties when he issued his summary judgment ruling? Well, I mean, leading up to that, I mean, the parties, you know, Metro filed their motion, I filed my response, and then it just goes in front of the court. He did. The ruling was not immediate. It was the last several months before we actually got a decision, I think, in 2018. So Jordan was relevant, but the parties didn't find that Judge Jones was unaware of it. That's correct. Okay. Everyone was ignorant of it, myself included, until I dug it up and I found it. So the reason that's important is that the entire argument from the Metro defendants is that, hey, you can't consider anything because we had a prelim, probable cause is done, case closed, goodbye. That's not the case at all because Jordan and in Nevada now, for the last 14 years, you can look beyond the preliminary hearing findings as to whether there was probable cause or not. So that issue, I think, is important. Obviously, it's something cited in my reply. But looking further, what was the issue of probable cause itself? Why was it wrongful in some way? With the understanding that there's been no discovery conducted in this case, all of this has been gleaned from the criminal proceedings in the Nevada State Court. But in those proceedings, there was evidence that the alleged victim in the case, Ms. Carter, when she called, she had met Dr. Scafidi at the Palms Hotel. They had an evening together. They go back to his hotel room. Everything is fine. They have sexual relations in the room. And then she bolts into the bathroom after it's all done, locks the door, calls 911, tells the 911 operator that Dr. Scafidi, he has a gun, he's going to kill me. She threatens suicide. Notably absent from that 911 call, which was part of the State Court proceedings, was any evidence, this guy raped me, this guy committed sexual assault on me. Nowhere to be found. The police come. There is no gun. There is no attempt murder. There is no suicide. And there's no actual statement from the victim herself saying that she was raped. She's interviewed by the detective from Metro, Detective Poole. And even in the first interview, she says that she was joking around. She was saying no in a jokey manner while they were having sexual relations. So even the detective himself was somewhat questioning, well, what kind of case do I have here? Maybe there's no case at all. Because if you have consent, it's not sexual assault. Can I ask a question on that? As I understood it, they both filmed the encounter with their cell phones? Yes. Did that evidence ever get produced? That was actually suppressed by a successful motion to suppress that suppressed a number of items from the criminal case that was brought up in the State Court. But they existed. Yes. But they existed. Yes. There's no allegation that the police destroyed it or anything like that. Not that. No, no. Got it. But so going further with the investigation, because probable cause hinges on, well, what was there for the investigation. Ms. Carter was taken to UMC, University Medical Center. The standard protocol, they conducted a sex assault. The kid's got a SANE, S-A-N-E, exam on her. The finding was that it was positive that she had sexual activity. Well, yeah, they all say that they had consensual sex. There was no finding of sexual assault to support that. And that's important because the Metro detective who obtained the search warrant that was part of the arrest process put in the search warrant affidavit that the SANE exam was positive for sex assault. That's not what it said. The search warrant affidavit, which was the basis for the suppression motion, also contained other misleading information in it. It did not include the information about the victim laughing and joking around about having sex with my client. It did not include information about the fact that the victim had essentially called 911 and said, he's got a gun. There was no gun. He's trying to kill me. No evidence of that. All that's left out of the search warrant application that a magistrate heard hearing that and said, oh, okay, there's sufficient probable cause to issue a search warrant, and you go from there. In that search warrant affidavit as well, the Metro detective referenced the fact that Dr. Scafidi invoked his right to have counsel, his Fifth Amendment right to remain  silent. That was actually put in the invocation of a constitutional right was put into the search warrant affidavit as somehow you should draw a negative inference from that because, oh, my gosh, he actually has the nerve to invoke a constitutional right, and that's a basis to get a search warrant? Okay. So these are all facts that came out, not to mention the fact that there was Dr. Ms. Carter indicated she was texting her friends throughout the entire incident, so those text messages were highly relevant. Metro took the phone at the hospital, looked at it, gave it back to her, gone. That was part of the Nevada Supreme Court appeal decision. Gone, meaning the text messages are gone. Text messages are gone, phone gone. They gave it right back to Ms. Carter, who's a resident of Canada, gone. And that contained potentially exculpatory evidence, which the Nevada Supreme Court addressed on that appeal. Including videos of the ---- Including conceivably videos because that was on her phone as well. So all of that evidence, which was in Metro's hands for a moment, looked at, who knows what they looked at. They gave it back. They didn't keep it. They retrieved nothing from that. So all of that relevant probative evidence about, you know, is there even sufficient probable cause here to even charge Dr. Scafidi with a really heinous act? You know, all this is very interesting. Yes, sir. But the legal question is actually pretty straightforward, and that is, do we follow Jordan? Because Jordan is pretty clear that it's a presumption only. Judge Jones thought that HALP said that it's conclusive, which I'm not sure that's a proper reading of HALP, by the way. But all this story you're giving is a very interesting background, and you'd get to be able to tell the story if it's not precluded by the preliminary hearing. That's correct. So do you have anything more on the legal question? Well, the legal question, the idea is, should this court give issue a preclusive effect, to what happened at the preliminary hearing, knowing all these facts, facts that have not been developed by any discovery at all in the actual case itself that we're here on? None of that happened. No opportunity. I would also note, as I cited in my reply brief, after the briefing was done, this court issued a decision, Mills v. City of Corvina, in April of last year, and that was a rather interesting decision that I found in doing the reply, and it raised a whole other matter. Dr. Scafidi's criminal case, it went to the Nevada Supreme Court, Supreme Court sent it back in the hearings. The state of Nevada, the DA's office, moved to dismiss the case, and the district court judge dismissed it. So what is your final judgment? This is not a conviction. It's not a reversal on appeal. It's a dismissed case, dismissed judgment, and this court has said in the Mills case, citing Ornelius, which is from the mid-1980, that if you have a reversal of a conviction, if you have a dismissed judgment, guess what? Everything that happened in the criminal case is for naught. It's all washed clean. There is no you take everything I just said and put it over there. If you have a dismissed judgment, then that means everything, the probable cause determination, all the motion hearings, all the this, all the that. Whatever happened didn't happen. Gone. Well, I like that you're citing Mills. I think you might be overstating it slightly, but nevertheless, I think the opinion helps you. But I have a question about Nevada state claims. There's a requirement that you have to exhaust, basically, right, that your client had to exhaust before filing Nevada state claims against the officers? I would disagree with that. Okay. Well, then I would like to understand that, because as I read the statute, it says each person who has a claim against any political subdivision of the state arising out of a tort must file the claim within two years after the time the cause of action accrues with the governing body of that political subdivision. All right. Do you agree that that was not filed before the complaint? Not filed and didn't have to. Okay. Nevada Supreme Court, even Judge Jones, to his credit, addressed that in the order. Turner v. Skaggs, 1973, nearly 50 years ago, the Nevada Supreme Court said that when you have a suit of this type against the police, and I'm sort of paraphrasing, essentially you don't have to follow this claim. It's called a claims resentment statute. You've got to go and waste your time submitting a demand to the agency. They say denied. Okay. You don't have to do that. Now, that was said nearly 47 years ago, 1973. The Nevada Supreme Court has never, never overturned Turner v. Skaggs. Now, we could say it's old law. Old law, good law, it's still on the books. The Nevada Supreme Court holding, which has never been overturned by that court, and the law in Nevada is you don't have to comply with the claims resentment statute. Now, Judge Jones, in his order, he said, well, yeah, I know about that, but here in federal court in Vegas I've got a couple of other district court departments. They looked at it and they say you do. Well, the Nevada Supreme Court, which is the final say in Nevada state law, says you don't. And they've had an opportunity to address it. I think I cited one of the cases in my opening brief. They've never overturned that. They've never addressed that. So maybe you have a conflict between what the legislature says and what the Nevada Supreme Court says, but what they said in 1973 is still as good today as it was back then. It was a good year. Of course, I was a little kid then. So that, the claims resentment statute, it's a red herring. It's a distraction. And it's thrown out there because of what the statute says. The statute doesn't jive with the Supreme Court's decision. Do you want to save some time? I will. Thank you so much, sir. Good morning, Your Honors. May it please the Court, Craig Anderson on behalf of the Las Vegas Metropolitan Police Department. And are you splitting time? Is that why I see a 12 up there? Yes, Your Honor. I'm going to do 12 minutes and then you, the nurse, will take the remaining three minutes. Okay, and you're going to address what and the other is going to do this? I'm addressing the police allegations. I represent the police department and all the officers. Okay, and your colleague is going to address? The claims, if there are any, against the nurse. Okay. Your Honors, correctly notice that this is an interesting case. But the issue before you is rather simple. The issue is whether issue preclusion applies to the magistrate's ruling that there was probable cause after the preliminary hearing. Now, in order in Nevada to have issue preclusion, there are the four factors that the issue be decided on the merits, that it be final, that there be privity between the persons who preclusion is sought against, and that it was actually and necessarily litigated. In this case, the witness who testified at the probable cause hearing was the victim. It was based upon her testimony that the Court found that probable cause existed. As this Court is well aware, the Supreme Court recently stated in Westby that the standard for probable cause is not a high bar, that the facts just have to give a reasonable inference that a crime was committed. Here, the victim testified that she said no to the sexual activity, that she was too inebriated to consent. She did not remember most of the evening. She didn't say that to start with, did she? I'm talking about what she said at the preliminary hearing. Correct. Okay, but when she was interviewed, she made no mention of any sexual matter, and then the cops went back, re-interviewed her, and basically said, you know, you don't have enough here for any kind of criminal conduct, and then encouraged her to make that allegation, right? Correct, to a point. What the detective did is he was interviewing her, and she was saying she did not remember, she didn't recall, and what he said was, okay, we're going to break this interview, and I'm going to see if you really go take this sane exam. It was basically a test, like how serious are you? Are you going to go meet with the doctors and undergo this intrusive exam? Do you really believe what you're saying, which she did. And when she finished the sane exam, she gave a second interview, which added more details to the event. But part of the detective pool only testified at the preliminary hearing regarding her demeanor, the way that he perceived her, whether he felt that she was able to consent. He was just supporting her testimony that a sexual assault occurred and that she was either unable to consent or that she said no. And at the preliminary hearing, that's all the magistrate is looking at, as to whether there was probable cause here to allow this to go forward. The magistrate found that it did. And I heard Judge Fletcher's comments on Awabi and the Jones case in Nevada. I don't think it's applicable here. Awabi. The Jordan case, you mean. The Jordan case. I apologize, Your Honor. In Awabi, the court found that a probable cause determination is prima facie evidence, but it can be altered if there is evidence of fraud, corruption, perjury, fabricated evidence, or other wrongful conduct. In Jordan, the allegation was that perjury occurred to obtain the arrest. In this case, there's no such allegations. Isn't there arguments that the police dummied up evidence regarding drugs, that they phonied up a photograph in order to support the positions that they were? Isn't that, in essence, part of the allegations that the plaintiff is making? That is an allegation in the affidavit, but it was not used at the probable cause hearing. And similar to Hopp, where Hopp the allegations were. But I think that's part of your problem. Speaking more generally, and then I'll go back to this case, probable cause hearings are abbreviated, and it's very often the case that an experienced criminal defense lawyer will not present much of his case at the probable cause hearing, preferring for tactical reasons to save it for later, which is why the general rule is, putting to one side for the moment Nevada, the general rule is what happens at the probable cause hearing is no more than, at most, presumptive evidence or presumptively conclusive because it's not a full and fair airing of all the evidence. That's just in the nature of the business. Now, Jordan tells us that it is not preclusive because it is not irrebuttable evidence of probable cause. It doesn't elaborate on it very much, but it cites this old case, Rickord, from 1880 in Nevada, which established that, and it sounds as though Jordan says that's still the law. So what do we do with that? Your Honor, what you look at at that point is whether there was probable cause here. I understand the arguments you're making. They would be arguments that would be allowed at trial. What we're determining, and you can determine separate of the issue, preclusion issue, is whether based upon the undisputed facts there was probable cause to arrest Mr. Scafidi. But what happened here, I gather, is that Judge Jones just looked at Judge Canby's opinion and said under Nevada law, once you get a probable cause hearing and that conclusion, that's the end of it. And so Judge Jones didn't hear all this stuff that we're now talking about. Well, you're reviewing this de novo, and you can look at the facts that are undisputed and determine whether, absent the issue, preclusion issue, there is still probable cause based upon the fact that these. . . That sounds like a job for a district judge. Well, this is a de novo review with undisputed facts in front of the court, which probable cause is an issue of law. Well, I'm not sure what facts are undisputed or not. Do you dispute the fact that the evidence was dummied up and we got a phony photograph? Well, I don't think I can dispute that at this juncture. Well, that's what I mean. And I'm not sure that was in the complaint. We are ill-suited to do fact-finding if you're saying, well, your answer suggested to me is, well, you might want to dispute it, but you can't hear. Well, okay, that's a reason for us not to do fact-finding. Well, then I would say this is analogous to a judicial deception claim where you would take those facts out of the equation and look at the facts that are not disputed, the facts that there was a serious 911 call where the plaintiff reported an assault and that she was feeling threatened. They found the victim locked in a bathroom. I get that. Now, Jordan is what it is. Apparently, the parties at the time in front of Judge Jones were not aware of it, nor was Judge Jones. It seems to me a sensible way is to send it back to Judge Jones and say, you know, there's a case here that may change the way you look at this case. Well, Jones—sorry, Jordan cited to Awabi in a footnote. It's correct. It was not an analysis of Awabi. But I don't believe you even need to go there because in Jordan the allegation was that it was perjury, and there was no preliminary hearing. It was a justice of the peace who looked at the charging document and said there's probable cause. The plaintiff then came in and said it was based on perjury. Here there's no allegation that there was perjury. But there's allegation that the fact-finding at the preliminary hearing was impermissibly influenced by false evidence put on by the cops. Not at the preliminary hearing. What do you mean not at the preliminary hearing? At the preliminary hearing, the issue was whether there was probable cause that a sexual assault occurred. The evidence put on at the preliminary hearing was strictly the testimony of the victim saying that she was too drugged to—or too intoxicated to understand what was going on and that she said no. On that basis alone, there's probable cause. The detectives didn't come in and testify to anything that's being said as perjurous. And in Awabi, the issue was fabricated evidence intentionally and knowingly. There was no evidence put on at the preliminary hearing that was intentionally and knowingly false or fabricated. It was strictly the testimony of the victim with Detective Poole supporting her representations about her intoxication level. So it's similar to where you're going with this as a judicial deception claim. All of these allegations are out there. I get it. But those are taken out, and you're looking at the facts that whether a reasonable officer on the day of the incident who finds a woman locked in a bathroom having makeshift some weapons, claiming that she's frightened of the Mr. Scafidi, that she says that she's been assaulted, whether a reasonable officer in those circumstances could conclude that there is a fair probability that a crime has been committed. And I would cite to under Devenpeck v. Alfred, it doesn't even have to be the sexual assault crime. It can be any crime for which there is probable cause. It could have been false imprisonment. Under these unique facts, any officer would have believed there was a reasonable probability that a crime had occurred and arrested Mr. Scafidi. All of the other stuff is noise. It was not relied upon because the video, they excluded it. Why do you exclude a video? Because it's not helpful. And so the detectives had watched that video, which went into their probable cause determination. Now I know now that it's been excluded. But it was the plaintiff that moved to exclude that. And I will just say, well, that would be a side issue. So what they're complaining is that the officers did wrong was not preserve text messages, that they made misrepresentations in an affidavit to obtain digital evidence, not to arrest him. The arrest had already occurred. So the warrant and the text messages are really irrelevant to this court's determination as to whether there's probable cause. And I will say, if you think Judge Jones should have looked at Jordan, you can then push the issue of preclusion to the side. And the other ground that he found for the defendants was that there is probable cause based upon these factors of how the defendants found the victim, what she told them. And I get it. It becomes a he said, she said. It becomes that. But that's how most of these cases are. And the detectives made a fair determination based upon the unique posture of the victim in this case, locked in a bathroom, bleeding, having created weapons, naked, saying that she was in fear for her safety. Any reasonable police officer under those circumstances would have found there was a fair probability that a crime occurred and allowed the arrest. The PC hearing then just supports that because they did not put on any evidence at the PC beyond the victim's testimony. There's no allegation of perjury. There's no allegation of fabricated evidence or intentional or knowing wrongdoing at the time of the preliminary hearing. So I think we're getting a little bit farther off than we need to be. And really quick to address Judge Nelson's about the notice claim statute. The Turner and Skaggs cases, they involved a 180-day window where they had to file the claim. So the Nevada Supreme Court said that because regular plaintiffs get two years. And so then the legislature amended it to the two years, which courts have consistently upheld. Not the Nevada Supreme Court. Well, isn't that the issue? I mean, the district court judge below cited some unpublished decisions from the federal courts. And the question is, is Turner still good? And I guess what I was trying to figure out, and maybe I just misread Turner, is Turner based on the fact that there's any notice required, or is it a difference in how they're treating private entities versus public entities? The only difference in how they're treating private or public entities is that the governing board of the municipality has to receive some form of notice. So if you file before the two years, but you do not serve, so there's no notice, then you would be barred by NRS 41.0. But you don't have any Nevada Supreme Court case that goes that way, only some unpublished district court cases? Correct. There's no Nevada Supreme Court since the statute was amended to the two years. But there is Johnson. There's the Maryland case, which is similar. The courts, under a rational review, have found that it's constitutional if the statute is the same as the notice claim on that. My time is up, but are there any other questions? Thank you very much. Thank you, Your Honors. Good morning. May it please the Court. I'm Brent Vogel on behalf of Nurse Derminalian. And for Nurse Derminalian, we're kind of in a strange position here. We joined in the police department's motion for summary judgment, but also filed our own separate points and authorities, which seem to have gone unresponded to. So with respect to Nurse Derminalian, the evidence is pretty clear in this case. In the case of the record below, all she did was the sexual assault nurse examination. And she's not a state employee. She's a private citizen. And the evidence in this case has been that she reported there is evidence of sexual contact. That's admitted by the plaintiffs. But the allegation against her in this complaint, and what we argued to the court below, was that they've alleged here, in paragraph 36 of the complaint, that despite the fact Derminalian found that there was only sexual activity, she set in motion a malicious prosecution of Dr. Scafidi. She also conspired with the other defendants to violate Dr. Scafidi's civil rights. There's been nothing put forth in response to Nurse Derminalian's affidavit on a summary judgment level indicating what that conspiracy was. And I confess I need a little help. And what did the district judge do with respect to your client? Well, that's kind of an interesting thing is, you know, we joined their motion and filed our own separate points and authority, but the order doesn't really say anything other than the motions are granted. So there were no real specific findings with respect to my client. So what we're left with is – But you made a motion for a summary judgment? We did. We did. Which was granted? Which was granted. And it's just unusual that the order doesn't really – it talks about the police department's motion and how everything's granted. It looks like the district court looked at the case and said, this is an issue preclusion case. We're granting summary judgment on that basis. And it's not clear to me whether or not he got to our points and authorities or not, but the motion was granted. And what's interesting, though, is in opposition, you know, under Rule 56, they've got to do some sort of admissible evidence in opposition. They don't point out any sort of evidence as to what the conspiracy was. And under Bucky v. County of Los Angeles, you've got to plead that conspiracy claim with specific facts. And the only thing in the complaint is just a bald assertion that she conspired. And that just doesn't meet the standard there. So regardless of what the other issue is with Metro, there is definitely a sound basis for granting summary judgment on behalf of Nurse Derminalian. There was no request under 56D to get some additional discovery or additional time. They submitted – Dr. Scafidi submitted a 15-page single-space affidavit, but it still doesn't say anything that Nurse Derminalian did to violate his constitutional rights. So on behalf of Nurse Derminalian, the order below should be affirmed. Thank you. Counsel for Metro said something I thought really interesting. He said, oh, we need some fact-finding here. You know, I agree. We do need some fact-finding here, some fact-finding about the arrests, some fact-finding about probable cause, some fact-finding about what led up to the preliminary hearing, some fact-finding about the case. Counsel for Derminalian says that talks about we may no request for additional discovery. How about some discovery? How about any discovery? Because there is zero in this case. How about we send this case back, and then the parties can actually meet and follow the rules and do a 26F conference and exchange some initial document production and get a scheduling order in place and actually do some work, all of us. Let me ask you about the nurse defendant. How serious are you about pursuing that defendant? At this stage, when no discovery has been conducted, it's our intention to keep her in the lawsuit at least at this stage. It strikes me as an extremely implausible chain of events, that the nurse who performed the examination would conspire with the cops. Conspire or was a simple negligence because the report came back just saying the parties had sexual activity, not sexual assault. So the report the nurse gives is sexual activity. They had sexual activity, yes. And that's what the nurse said? Well, that's what the report said. And what's wrong with that? Nothing wrong with that. It's how it was constructed. Shall I repeat? Are you serious about going after the nurse? At this time, I'll toe the party line and say I'd like to keep her in the lawsuit if we can get a little discovery done. But under Rule 11, if I don't feel that the claim is worth pursuing, I have an ethical obligation to dismiss that defendant. If she was part of the conspiracy, wouldn't she have said that it was sexual assault, not just sexual activity? Presumably. Why don't you just say right now you're done with the nurse? I would say go 49ers. Well, I wonder what the claim is against her. I mean, she did what she was supposed to do. She did an evaluation. She said there was sexual conduct. But she can't say there was assault or there was some other thing. Why are you making a lawsuit against her? She's not a state actor, is she? Well, she works at UMC. UMC, University Medical Center, is run by Clark County, so it is a government agency. So one could say that she is an agent of the state of a political subdivision in Nevada. I would note for the record that I was not counsel who drafted the original complaint. Well, you're counsel now. I'm counsel now, and I bought it. And so you're keeping her in. Here's your chance to. Your Honor, you're putting me on the spot. I am. I'd like to confer with my client and do my ethical job and talk to my client first before I commit to such a request. Sir. Okay. Thank you. The case just argued, Scafidi v. Las Vegas Metropolitan Police Department submitted. And that completes our arguments for the day. We're adjourned.
judges: W. Fletcher, R. Nelson, Molloy